# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

In Re

BRANDY J. GRIMMETT,

                **Debtor.**

**Bankruptcy Case
No. 09-40642-JDP**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

     David E. Gabert, Pocatello, Idaho, Attorney for Debtor.

     James A. Spinner, SERVICE & SPINNER, Pocatello, Idaho, Attorney
for Trustee R. Sam Hopkins.

### *Introduction*

Chapter 7[1] debtor Brandy J. Grimmett  argues that certain payments

she is entitled to receive under an agreement with her former spouse are

_____

     [1]  Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION - 1

exempt as alimony under Idaho Code § 11-604(1).  Docket No. 3.  Trustee

has objected to the exemption claim. Docket No. 44.  The Court conducted

an evidentiary hearing on January 13, 2010, the parties have submitted

briefs, and the Court took the issues under advisement.  Having

considered the submissions of the parties, the testimony and evidence, as

well as the applicable law, this Memorandum constitutes the Court's

findings of facts and conclusions of law and disposes of the issues.  Fed. R.

Bankr. P. 7052; 9014.

### *Findings of Fact*

In August, 1990, Debtor and Scott Wells ("Wells") were married.

Debtor worked outside their home until the birth of their first child in

1994, after which she remained at home, as two other children followed in

1996 and 1997.  In 1994 or 1995, Wells purchased a customer list from his

father's company, and started up Wetco, a company which he operated

until 2004, at which time he sold the business to his brother.  Wells then

began a new consulting business called Wellnam, Inc., his current

business.

MEMORANDUM OF DECISION - 2

Both Wetco and Wellnam were successful businesses, and the Wells family enjoyed a very comfortable lifestyle, with an annual income of over $100,000.  They lived in an expensive home, and vacationed in Mexico twice per year.  Debtor did not need to work outside the home and she was able to accompany Wells on frequent business trips.  In addition, during their marriage, Debtor and Wells made numerous investments, and Wells laid the foundation to start other businesses.  For many years, Debtor assisted Wells with Wetco, and later Wellnam, doing paperwork and other tasks which benefitted those businesses.

In 2004 or 2005, Debtor received a nail technician license from Idaho State University's vocational program and worked briefly outside the home.  However, her frequent travel made it difficult to retain regular clients, and the money she brought in was minimal and not worth the disruption to the family's plans, so she quit her job doing nails and resumed her role as a stay-at-home mother, and also served as an assistant to Wells in the family business.

In 2007, the marriage failed and Wells filed for divorce.  The state

MEMORANDUM OF DECISION - 3

court proceedings were contested and protracted, and the parties were

generally unable to agree on terms for a divorce.  They attempted

mediation and reached an agreement, only to have Wells decide he could

not abide by the agreement and renege.  The negotiations by phone and

email continued until, on the eve of a trial, the parties reached an

agreement on the last outstanding issue.  A written Alimony Agreement

("Agreement") was executed by the parties on December 18, 2008, and a

divorce decree was entered in state court on December 23, 2008.  The

Agreement includes recitals indicating that Wells and Debtor are

stipulating to entry of a divorce decree, and that Wells must pay Debtor

alimony according to the terms of the Agreement.  The relevant portion of

the Agreement provides:

> 1.   ALIMONY: [Wells] shall pay to [Debtor]
>      total alimony in the amount of $175,000
>      payable as follows:
> 1.01   A payment of $10,000 shall be paid
>        on January 5, 2009.
> 1.02   A payment of $10,000 shall be paid
>        on July 1, 2009.
> 1.03   Commencing January 1, 2010, the
>        sum of $10,000 shall be paid on

MEMORANDUM OF DECISION - 4

> January 1st and July 1st continuing
> until the total amount of $175,000 of
> alimony is paid.  The final payment
> will be the $5,000 amount.

Ex. 205.

About the time Wells filed for divorce, Debtor began taking general

education college courses, aiming toward a career in the medical field.  She

received her certification as a Nurses Assistant and applied for admission

to a college nursing program.  At that time, Debtor also began working as

a server at restaurant in Pocatello, Idaho.

Wells moved to Utah.  In an effort to make their shared custody

arrangement easier, Debtor also moved to Utah in November, 2009.  She

secured a similar restaurant job in Utah where she earned approximately

$5,000 in 2009, but she testified that all or nearly all of her hourly wage

went to pay her medical insurance, and that the only money she brought

home came from tips.[2]

---

[2]  Schedule I reflects that her monthly gross wages are $192.76 and she gets
"Anniversary Pay" of $49.75, but that her payroll deductions are $197.62 per
month.  Docket No. 3.

MEMORANDUM OF DECISION - 5

Debtor was receiving $1,224 in child support per month at the time she filed the petition.[3]  She also receives $10,000 every six months pursuant to the Agreement.  Other than wages, she has no other sources of income, and is using government grants and student loans to finance her college education.  If all goes according to plan, Debtor expects to graduate and be licensed as a nurse by 2013, at which time she hopes to get a nursing position.

Wells has paid each of the $10,000 installments due under the Agreement.  The first two payments were paid to Debtor, but the January, 2010, payment was paid to Trustee to hold until the status of Debtor's claim of exemption could be resolved.  Debtor testified that without the money under the Agreement, she cannot support herself and her children, and will have to apply for food stamps and other government welfare programs in order to meet her basic needs as well as those of her children.

---

[3]  It appears this number may change.  Just prior to the January 13, 2010 hearing, Debtor learned that she was accepted into the nursing program at the College of Southern Idaho in Twin Falls.  She testified that it is her intent to move to Twin Falls to attend college full-time, and that only her oldest child would be moving with her, while the other two would reside in Utah with Wells.

MEMORANDUM OF DECISION - 6

On May 5, 2009, Debtor filed a chapter 7 bankruptcy petition.  She

initially failed to include the $10,000 payment as alimony on schedule B,

nor did she claim it exempt on schedule C.  She did, however, include the

$10,000, broken down into monthly payments of $1,666.67, as income on

schedule I.  On September 28, 2009, Debtor filed amended schedules B and

C to list the payments as alimony and to claim it exempt as such.  Docket

No. 41.  Trustee objected to the claim of exemption.  Docket No. 44.

### Conclusions of Law and Disposition

When Debtor filed her bankruptcy petition, a bankruptcy estate was

created, comprised of all of Debtor's legal or equitable interests in property

as of the commencement of the case.  *See* 11 U.S.C. § 541(a)(1).  Debtor

may exempt certain types of property from the bankruptcy estate.  *See* 11

U.S.C. § 522(b)(1).  Because Idaho has "opted out" of the federal

bankruptcy exemptions, Idaho debtors may utilize only the exemptions

provided under state law.  *See* 11 U.S.C. § 522(b)(3); Idaho Code § 11-609.

A debtor's exemption rights are fixed as of the petition date.  *In re*

*Almgren*, 8.1 I.B.C.R. 3, 3 (Bankr. D. Idaho 2008).  As the objecting party,

MEMORANDUM OF DECISION - 7

Trustee has the burden of proving an exemption is not properly claimed.

Fed. R. Bankr. P. 4003(c).  If Trustee presents sufficient evidence to rebut

the prima facie validity of the exemption, the burden shifts to Debtor to

demonstrate the exemption is proper.  *In re Wiley*, 352 B.R. 716, 718 (Bankr.

D. Idaho 2006).  Moreover, while Idaho's exemption statutes are liberally

construed in Debtor's favor, the statutory language may not be "tortured"

in the guise of liberal construction.  *In re Collins*, 97.3 I.B.C.R. 78, 79 (Bankr.

D. Idaho 1997).

     In this case, Debtor claimed the $10,000 semi-annual payments she is

entitled to receive from Wells under the Agreement as exempt under

Idaho Code § 11-604, which provides:

> An individual is entitled to exemption of the
> following property to the extent reasonably
> necessary for the support of him and his
> dependents:
> * * * * *
>     (b) money or personal property received,
> and rights to receive money or personal property
> for alimony, support, or separate maintenance[.]

Idaho Code § 11-604(1)(b).  Thus, the precise issue before this Court is

whether the payments to Debtor under the Agreement are for "alimony,

MEMORANDUM OF DECISION - 8

support, or separate maintenance" and, if so, whether the payments are

necessary for the support of Debtor and her dependents.

There is no state case law to guide the Court in deciding whether the

payments owed to Debtor under the Agreement constitute exempt

alimony under Idaho Code § 11-604(1)(b). However, there is an

abundance of decisional authority dealing with whether a debtor's

obligation to a former spouse constitutes alimony for dischargeability

purposes under a former version of § 523(a)(5).[4]  Because of the similarity

in the language employed in both statutes, the Court has looked to that

discharge case law for guidance in the past, and will do so today.  *See In re*

*Rogers*, 349 B.R. 667, 670 (Bankr. D. Idaho 2005); *In re Martin*, 04.3 I.B.C.R.

131, 132 (Bankr. D. Idaho 2004).  In that regard, the Ninth Circuit has

stated:

> In determining whether an obligation is intended
> for support of a former spouse, the court must

---

[4]  Prior to its amendment in 2005, § 523(a)(5) provided that a discharge did
not discharge an individual debtor from any debt "to a spouse, former spouse, or
child of the debtor, for alimony to, maintenance for, or support of such spouse or
child, in connection with a separation agreement, divorce decree or other order
of a court of record, . . ."

MEMORANDUM OF DECISION - 9

look beyond the language of the decree to the intent of the parties and to the substance of the obligation. The courts that have considered this issue have used several factors to aid in the characterization of the debt. If an agreement fails to provide explicitly for spousal support, a court may presume that a so-called "property settlement" is intended for support when the circumstances of the case indicate that the recipient spouse needs support. Factors indicating that support is necessary include the presence of minor children and an imbalance in the relative income of the parties. Similarly, if an obligation terminates on the death or remarriage of the recipient spouse, a court may be inclined to classify the agreement as one for support. A property settlement would not be affected by the personal circumstances of the recipient spouse; thus, a change in those circumstances would not affect a true property settlement, although it would affect the need for support. The court will look also to nature and duration of the obligation to determine whether it is intended as support. Support payments tend to mirror the recipient spouse's need for support. Thus, such payments are generally made directly to the recipient spouse and are paid in installments over a substantial period of time.

*Shaver*, 736 F.2d at 1316-17 (internal citations omitted); *see also In re Martin,*

*supra*; *Norris v. Norris (In re Norris)*, 94 I.B.C.R. 233, 234 (Bankr. D. Idaho

1994).

MEMORANDUM OF DECISION - 10

Thus, the Court should look beyond the label used by the parties in their "Alimony Agreement" and consider not only the language of the Agreement, but also the intent of the parties and the substance of the obligation. To aid in this endeavor, the Court will consider the several helpful factors enunciated in *Shaver*.

1. Spousal Support in the Decree.

The first factor is whether spousal support is provided for in the divorce decree. The decree of divorce for Wells and Debtor does not explicitly provide for spousal support, nor does it even mention it. As quoted above, the *Shaver* court indicated that when a decree fails to provide for spousal support, a court may "presume that a so-called 'property settlement' is intended for support when the circumstances of the case indicate that the recipient spouse needs support." *Id*. at 1316. Likewise, it would appear that this Court may presume that a document entitled "Alimony Agreement" is, in fact, one intended for support should the circumstances indicate that Debtor needs support.

Does Debtor Need Spousal Support?

MEMORANDUM OF DECISION - 11

To determine if Debtor needs support, *Shaver* directs a bankruptcy court to consider the presence of minor children, and any imbalance in the relative income of the parties.  Because exemptions are determined as of the date of the filing of the petition, the Court will consider the parties' circumstances as of that date, May 5, 2009.

Although the record does not include a copy of the child custody order, which was negotiated and entered separately, but incorporated into the decree, Wells and Debtor's testimony established that although they had joint custody of their three children, the oldest child lived with Wells and the two younger children resided with Debtor.  Debtor's testimony further established that after the end of the 2009 school year, the oldest child also came to live with Debtor, and that Wells and Debtor were going back to family court to modify the child support order to reflect the new arrangement.  However, May 5, 2009, was prior to the end of the school year, and thus on petition day, Debtor had two of the three children residing with her.

The *Shaver* decision further directs the Court to consider any

MEMORANDUM OF DECISION - 12

imbalance in the relative incomes of Wells and Debtor.  At the hearing,

Trustee made much of the fact that Wells had only a high school

education, while Debtor had a nail technician license and was a CNA

(certified nurse's assistant).  The Court does not consider the disparity of

education particularly significant here.  Moreover, the evidence is clear

that, despite having only a high school education, Wells has successfully

established, owned and operated several businesses which resulted in an

annual income in excess of $100,000.  He did so while Debtor stayed home,

raised their children, and acted as his personal assistant from time to time

in order to aid the family business.  It is telling that Wells encouraged

Debtor to quit her job as a nail technician, because it was disruptive to the

family's schedule, and because it did not bring in enough income to make

it worth the while.  The Court finds a significant imbalance with regard to

Wells' and Debtor's relative incomes.  Overall, this factor weighs in favor

of Debtor.

    2.  <u>Relevance of Debtor's Personal Circumstances</u>.

    The next item for the Court to consider is whether Debtor's personal

MEMORANDUM OF DECISION - 13

circumstances have any bearing on Wells' obligation to continue

payments, most notably, whether his obligation terminates on Debtor's

death or remarriage.

This factor is equivocal for purposes of resolving whether the

Agreement is in the nature of alimony.  While Wells' obligation does not

terminate in the event of Debtor's remarriage, as support payments

generally would, the obligation does terminate in the case of the death of

either Wells or Debtor, a term which would not be found in the usual

property settlement agreement.

3.  <u>Nature and Duration of Agreement</u>.

The last factor the Court must consider is the nature and duration of

the Agreement.  As *Shaver* noted, support payments tend to mirror the

recipient spouse's need for support.  Here, there is no question Debtor

needs spousal support at present.  As discussed above, the younger

children lived with Debtor, and there is a significant disparity between

Debtor's income and that of Wells.  Debtor's restaurant job generates little

in the way of take home pay, but does provide medical insurance to

MEMORANDUM OF DECISION - 14

Debtor, which is significant.  But it is clear that given the amount of her

earnings and the child support she receives from Wells, Debtor can not

pay even modest living expenses without the semi-annual payments

under the Agreement.  *See* Docket No. 3, Schedules I and J.  While it is true

that Debtor is on track to finish her college education and begin working

as a nurse prior to the time the payments under the Agreement will

conclude, Debtor has already taken out approximately $16,000 in student

loans, and very likely will have to incur more debt to finish nursing school.

Thus, while Debtor will likely earn a decent wage as a nurse upon

graduation, she will also have to repay her student loan debt.  As a result,

the Court is not altogether concerned that the payments due under the

Agreement will extend beyond Debtor's completion of her college

education by about four years.

The *Shaver* court noted that support payments are "generally made

directly to the recipient spouse and are paid in installments over a

substantial period of time."  That is certainly true here.  Wells is required

to pay the installments directly to Debtor, and such payments will be

MEMORANDUM OF DECISION - 15

made for a period of nine years, concluding in 2017.

Finally, the parties called their contract an "Alimony Agreement",
and while not a part of the divorce decree, it recites that the parties are
stipulating to entry of a divorce decree, and provides "that Scott [Wells]
shall pay to Brandy [Debtor] *alimony* as set forth hereinafter." Ex. 205
(emphasis supplied). Throughout, the Agreement refers to the payments
as "alimony". *Id*. The Court finds this factor weighs in Debtor's favor.

    4. <u>Intention of the Parties</u>.

Although not specifically listed as a factor in *Shaver*, the goal of the
examination of the form and substance of the Agreement is to discern the
intention of the parties in executing the agreement. Thus, the Court
acknowledges Wells' testimony concerning the purpose behind the
creation of the Agreement. According to Wells, he wanted to have sole
interest in and control over his various businesses, especially Wellnam.
That company was a going concern built during the course of the

MEMORANDUM OF DECISION - 16

marriage, and certainly worth something to Debtor.[5]  Since the decree

awarded Wells ownership of Wellnam, some sort of equalizing payment to

Debtor would have been in order to even things out.  However, no such

equalization is found in the decree, which instead awards Wells the vast

majority of the assets, including Wellnam.  The decree requires Wells to

assume the bulk of the business debt, and the personal debt appears fairly

evenly split.  On its face, then, the property division in the decree was

roughly equal in terms, which gives credence to Debtor's characterization

of the Agreement as one in the nature of support.[6]

　　　Thus, Wells testified that he signed the Agreement in order to

_____

[5] Of course, Wells attempted to have it both ways in the divorce on this
point.  He argued on one hand that Wellnam should be valued at zero because it
is was sole proprietorship and depended solely upon him and the work he puts
into the enterprise for its success, while on the other hand contending that he had
to basically buy Debtor off so he could keep the businesses himself, thus
implying it had value.  The record is clear that the businesses were never valued,
as Wells feared close scrutiny of his financial records, and Debtor could not fund
a business appraisal.  Suffice it to say, the business is a successful going concern,
and certainly worth something, although that amount remains undetermined.

[6] There was testimony that the bulk of the business debt had been
fabricated by Wells, and that he would never have to pay it back in actuality.  But
the Court declines to make any findings or conclusions based upon that
testimony, as there is nothing in the record to substantiate that argument beyond
Debtor's bare assertions.

MEMORANDUM OF DECISION - 17

essentially pay off Debtor for her share of the business assets.  Debtor

countered by testifying that when the Agreement was executed, she

absolutely needed the money, and that while the funds to be paid through

the Agreement would not place her in the same lifestyle to which she had

become accustomed during the marriage, it would assist in supporting her

and the children until she was done with school and could support herself.

In addition, although Wells contested Debtor's right to alimony in

divorce court, that court did not, in fact, make any such award.  However,

that would not prevent Wells from executing an agreement for the

payment of alimony separate and apart from the decree.  *Miller v. Miller*,

396 P.2d 476, 479 (Idaho 1964) ("this court recognized the right of a

husband and wife to contract concerning payments for support and

maintenance, suit money, and settlement of property rights as between

themselves").  The decree does not refer to the Agreement, and the Court

was not provided with a transcript of the divorce court proceedings to

know whether the issue of spousal support was discussed in state court.

MEMORANDUM OF DECISION - 18

Despite Wells' statements, the Court concludes that the payments under the Agreement were intended to provide for Debtor's support, rather than as a property settlement.

5. Is the Spousal Support Reasonably Necessary?

Concluding that the payments under the Agreement are for alimony, however, does not end the analysis for exemption purposes. Under Idaho Code § 11-604(1)(b), even if the payments are for Debtor's support, they are only exempt to the extent reasonably necessary. Idaho Code § 11-604(2) defines the amount reasonably necessary for a debtor's support as that "required to meet the present and anticipated needs of the [debtor] and his dependents, as determined by the court after consideration of the [debtor's] responsibilities and all the present and anticipated property and income of the [debtor], including that which is exempt." When referring to a debtor's "present and anticipated needs," the Court must look at Debtor's present needs, as well as those that were reasonably anticipated, as of the date Debtor filed for bankruptcy. *In re Lopez*, 05.3 I.B.C.R. 80, 82 (Bankr. D. Idaho 2005).

MEMORANDUM OF DECISION - 19

The testimony is clear that Debtor cannot presently meet her basic needs with only the child support payments and her wages.  In fact, Debtor's rent payments alone have been approximately $1,100 to $1,200 per month since the time of the filing.  *See* Docket No. 3; Exs. 101, 102. Insurance, food, utilities and transportation costs, among others, would be expenses for Debtor to bear as well.  Debtor's Schedules I and J, which detail her income and expenses, indicate that even with the $10,000 semi-annual payment reflected as six monthly payments of $1,666.67, she still does not break even with regard to her expenses.  Thus, the Court concludes that the full $10,000 semi-annual payment was reasonably necessary when Debtor filed her bankruptcy petition.

However, the Idaho statute requires the Court to prognosticate concerning Debtor's future, and determine what amount, as viewed from the petition date, will be reasonably necessary in the future.  The Court concludes that the entire sum will be necessary.  Debtor will likely be a full-time student until some time in 2013, something that will hinder her employment opportunities, and necessitate an influx of funds from the

MEMORANDUM OF DECISION - 20

Agreement.  In addition, when Debtor graduates with her degree, she will

still have minor children to care for, as well a significant amount of student

loans to repay.

All things considered, the Court finds that the entire amount of the

alimony payments are reasonably necessary for Debtor's current and

future support.

### Conclusion

For these reasons, the Court concludes that the payments under the

Agreement are for Debtor's support.  The Court further finds that the total

amount of the payments are reasonably necessary for her present and

future support.  Accordingly,  for purposes of Idaho Code § 11-604(1)(b),

all payments under the Agreement are exempt.  Trustee's objection to

Debtor's claim of exemption will be denied in a separate order.

Dated:  March 24, 2010

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 21